UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| TRI-STATE CARBONIC, LLC,<br>an Indiana Limited Liability Company,<br><br>    Plaintiff and<br>    Counter Defendant,<br><br>    v.<br><br>ORSCHELN FARM AND HOME LLC,<br>a Missouri Limited Liability Company,<br><br>    Defendant and<br>    Counter Claimant. | 4:10-cv-71-WGH-TWP |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, on Defendant's Motion for Summary Judgment filed on March 18, 2011.[1] (Docket Nos. 17-19). Plaintiff filed a Response on June 21, 2011 (Docket Nos. 22-23) and its Appendix on June 23, 2011 (Docket No. 24). Defendant filed its Reply on July 8, 2011. (Docket No. 25).

**I. Background**

On December 31, 2002, Defendant, Orscheln Farm and Home, LLC ("Defendant"), entered into a Lease ("Lease") in which it leased property commonly known as 40 Doughty Road, Lawrenceburg, Dearborn County,

---

[1] On October 7, 2010, the parties consented to Magistrate Judge jurisdiction in this case. (Docket No. 13). U.S. District Judge Tanya Walton Pratt entered an Order of Reference on October 12, 2010. (Docket No. 14).

Indiana ("Property"). (*See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment at Ex. A). The Landlord identified in the Lease was the Melvin Lonowski Testamentary Trust ("Trust"). (*See id.*). At all pertinent times, Nancy Ashcraft ("Ashcraft") was the Trustee of the Trust. (*See* Affidavit of Nancy Ashcraft ("Ashcraft Aff.") ¶ 2).

The pertinent parts of the Lease concerning repairs to the Property include Sections 12.1, 13.1, 13.2, and 19. Section 12.1 states:

> 12. Damage and Restoration.
>
>> 12.1 If the Building or any improvements on or to Leased Premises are damaged in whole or part by any cause whatsoever, Landlord shall forthwith at its sole expense repair, restore and rebuild the same with all reasonable dispatch and diligence, so far as practicable and lawful, to a complete unit of like quality, character and condition as that which existed immediately prior to such damage. Said repair, restoration and rebuilding shall be constructed in accordance with plans and specifications prepared by a licensed architect selected and employed by Landlord, and performed by a licensed general contractor, which work shall be promptly commenced and diligently prosecuted to completion. Said plans and specifications, architect, and general contractor shall first be approved in writing by Tenant, which approvals shall not be unreasonably withheld. An equitable portion of the rent hereunder shall be abated based on Tenant's actual loss of use of the Building and the degree of inconvenience or other loss to Tenant as a result of such damage.

(Memorandum of Law in Support of Defendant's Motion for Summary Judgment at Ex. A). Sections 13.1 and 13.2 of the Lease further provide:

13. Repairs to the Leased Premises.

   13.1 During the Term, Landlord shall, at its sole cost and expense: (a) repair or replace, as and when needed, the parking lot (except for striping and sealing), exterior portions of the Building (including roof and all wall systems), all structural parts of the Building, both exterior and interior, including, without limitation, floor slabs, foundation, structural portions of walls and roof and all utility lines from the point of access at the street (or other junction) to the Building, and the heating, ventilation and air conditioning systems (except that Tenant shall perform routine maintenance thereof including replacement of disposable filters), (b) correct all defects in the initial construction of the Building and make all repairs thereto covered by warranties, and (c) insure that the Leased Premises comply with all laws regarding the construction or structure of the Building and any other improvements on the Leased Premises including, without limitation, the Americans with Disabilities Act (except for Tenant's construction of handicap accessible restroom as part of Tenant's Initial Improvements).

   13.2 Except for Landlord's obligations stated in Section 13.1 above and elsewhere in this Lease, Tenant shall, at its own expense, keep and maintain the interior and exterior of the Building, including all doors and windows, in good order, condition, and repair, and in compliance with all laws and regulations applicable thereto, and shall be responsible for striping and sealing the parking lot and for routine maintenance of the heating, ventilation and air conditioning systems including replacement of disposable filters, during the entire Term of this Lease; provided, however, notwithstanding anything to the contrary contained elsewhere herein, Tenant shall have no obligation for any repairs or maintenance to be made because of damage occasioned by fire, earthquake, wind or other casualty or cause for which Landlord has the duty to repair or rebuild or for which Tenant has the option to terminate this Lease as provided elsewhere in this Lease.

(*Id.*). Finally, Section 19, titled "Surrender of Leased Premises," explains that "Tenant shall, at the termination of this Lease, vacate the Leased Premises in as good condition as they were following the completion of Tenant's Initial Improvements except for reasonable use and wear and tear thereof, acts of God, or damage by casualty beyond the control of Tenant." (*Id.*).

Defendant and the Trust entered into a series of Amendments to the Lease extending the term of the Lease for short periods, with the term of the last such extension ending at 12:01 a.m., on November 1, 2009. (Memorandum of Law in Support of Defendant's Motion for Summary Judgment at Ex. A).

According to Ashcraft, Defendant was always a good tenant at the Property and always paid its rent on time and adequately performed its obligations under the Lease. (*See* Ashcraft Aff. ¶ 4). The Trust never sent any notice of default to Defendant for failure to perform any obligations of Tenant under the Lease and had no reason to do so. (*Id.* ¶ 5). Ashcraft, on behalf of the Trust, inspected the condition of the Property routinely twice a year. (*Id.* ¶ 6). To the best of Ashcraft's knowledge and belief, at the time of each inspection of the Property (including the last inspection in May of 2009), the Property was in satisfactory condition and was in as good condition as of the date of the Lease (and as of the completion of Tenant's Initial Improvements under the Lease), except for reasonable use and reasonable wear and tear. (*Id.* ¶ 7). Based on the good condition of the Property, the Trust would not have made any claim against

Defendant at the end of the term of the Lease as to the condition of the Property. (*Id.*).

On September 15, 2009, the Trust entered into a Contract for Purchase of Real Estate ("Purchase Contract") with Plaintiff, Tri-State Carbonic, LLC ("Plaintiff"), for the sale of the Property. (Memorandum of Law in Support of Defendant's Motion for Summary Judgment at Ex. C). The sale of the Property to Plaintiff occurred on September 29, 2009. (Ashcraft Aff. ¶ 8). On or about the date of the closing, the Trust received Defendant's rent for the last month of the Lease and forwarded the last month's rent to Plaintiff. (*Id.*).

The Purchase Contract provides that Plaintiff "acknowledges having been given unconditional opportunity to inspect the Property . . . [and] understands . . . that the Property is sold on an 'As Is', 'Where Is' and 'With All Faults' basis . . . ." (Memorandum of Law in Support of Defendant's Motion for Summary Judgment at Ex. C).

Representatives on behalf of Plaintiff inspected the Property on numerous occasions prior to closing and never notified Ashcraft of any concerns regarding damage to the Property by Defendant. (*See* Ashcraft Aff. ¶ 10).

Ron Gillespie ("Gillespie") was the store manager of the Property from November 2008 until the closure of the store at the end of October 2009. (*See* Affidavit of Ron Gillespie ("Gillespie Aff.") ¶ 2). On October 28 or 29, 2009, Gillespie turned over the keys to the Property to Plaintiff after an inspection of the Property. (*Id.* ¶ 3). Plaintiff did not state any objections to Gillespie as to the

condition of the building or grounds during the entire inspection except for saying that a small water line next to the garage door was dripping.  (*Id.* ¶ 4).  On November 1, 2009, Defendant vacated the Property.  (Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 4).

On January 26, 2010, Defendant received a letter from Plaintiff's counsel demanding payment of the real estate taxes, insurance premiums,[2] and repairs to the Property in excess of $100,000.  (*See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment at Ex. E).  On February 4, 2010, Defendant's counsel responded to the January 26, 2010 letter, and raised numerous objections.  (*See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at Ex. B-2).

On June 22, 2010, Plaintiff filed its Complaint alleging that Defendant's actions amounted to a breach of the Lease.

## II. Summary Judgment Standard

Summary judgment is proper only if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of informing the court of the basis for its motion and demonstrating the "absence of evidence on an essential element of the non-moving party's case," *Celotex Corp.*, 477 U.S. at

---

[2]Defendant has not disputed, for the purposes of this Motion for Summary Judgment, that Plaintiff is entitled to reimbursement for payment of insurance premiums and taxes.

323, 325. To withstand a motion for summary judgment, the non-moving party may not simply rest on the pleadings, but rather must "make a showing sufficient to establish the existence of [the] element[s] essential to that party's case, and on which that party will bear the burden of proof at trial. . . ." *Id.* at 322. If the non-moving party fails to make this showing, then the moving party is entitled to judgment as a matter of law. *Id.* at 323.

In determining whether a genuine issue of material fact exists, the court must view the record and all reasonable inferences in the light most favorable to the non-moving party. *See Nat'l Soffit & Escutcheons, Inc. v. Superior Sys., Inc.,* 98 F.3d 262, 264 (7th Cir. 1996). No genuine issue exists if the record viewed as a whole could not lead a rational trier of fact to find for the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Ritchie v. Glidden Co.,* 242 F.3d 713, 720 (7th Cir. 2001).

## III. Discussion

Plaintiff brought this suit alleging that Defendant's actions amounted to a breach of the Lease. Defendant's Motion for Summary Judgment raises four distinct issues. First, Defendant argues that Plaintiff failed to respond to Requests for Admission and that the matters in the requests have, therefore, been deemed admitted. Second, Defendant argues that Plaintiff accepted the Property upon termination of the Lease, and Plaintiff waived or is estopped from any right to seek damages. Third, Defendant argues that it is a third-party beneficiary of the Purchase Contract between Plaintiff and the Trust. Fourth,

Defendant argues that Plaintiff cannot demonstrate that it has suffered any damages under the terms of the Lease.

## A. Requests for Admission

Defendant's first argument is that Plaintiff's failure to respond to Requests for Admission from December 15, 2010, means that those requests must be deemed admitted. The court concurs. Pursuant to Rule 36(a)(3) of the Federal Rules of Civil Procedure, a party's failure to submit a response to requests for admission renders the matters admitted.

On December 15, 2010, Defendant served Interrogatories, Requests for Admission and Requests for Production on Plaintiff. Plaintiff served the following Requests for Admission:

> 1. Admit that you did not inspect the Property immediately after Orscheln's initial improvements.
> 2. Admit that you have no personal knowledge about the condition of the Property immediately after Orscheln's initial improvements.
> 3. Admit that you did not inspect the Property at the time or near the time that Orscheln signed the initial lease.
> 4. Admit that you have no personal knowledge about the condition of the Property at or near the time that Orscheln signed the initial lease.
> 5. Admit that you agreed to purchase the Property "As Is" and "With All Faults."
> 6. Admit that two authorized agents of Tri-State conducted an inspection of the Property between October 25, 2009 and November 1, 2009.
> 7. Admit that during the inspection, two authorized agents of Tri-State told Orscheln's store manager that no significant repairs were necessary.
> 8. Admit that during the inspection, two authorized agents of Tri-State failed to advise Orscheln's store manager about any of the repairs requested via letter on January 26, 2010.
> 9. Admit that Orscheln vacated the Property on or about November 1, 2009.

> 10. Admit that you never notified Orscheln of any requested repairs to the Property prior to November 1, 2009.
> 11. Admit that you did not provide Orscheln with the opportunity to cure any alleged defects with the Property on or before November 1, 2009.
> 12. Admit that you did not obtain an assignment of the lease from the Melvin Lonowski Testamentary Trust.

(*See* Defendant's Discovery Requests, dated December 15, 2010, Appendix Exhibit F). Plaintiff's answers to Defendant's discovery requests were due on or about January 14, 2011. (*See id.*). As of July 8, 2011, Plaintiff has not responded to Defendant's Requests for Admission. (*See* Reply Brief at 2). By Plaintiff's failure to respond to Defendant's Requests for Admission, each of the items discussed above is now deemed admitted for the purposes of this lawsuit.

### B. Waiver or Estoppel

Defendant also contends that Plaintiff waived its right to (or is estopped from pursuing) any damages under the Lease. Specifically, Defendant argues that Plaintiff's lone opportunity to inspect the Property and to declare Defendant in default under the Lease was prior to Defendant transferring possession of the Property back to Plaintiff upon termination of the Lease. Waiver is the intentional abandonment or relinquishment of a known right. For the purposes of a contractual dispute, waiver involves giving up the right to treat the contract as breached by the opposing party. *See Waxman Indus., Inc. v. Trustco Develop. Co.,* 455 N.E.2d 376, 378 (Ind. Ct. App. 1983). As for estoppel, it is a judicial doctrine sounding in equity; the doctrine essentially provides that "one who by

deed or conduct has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to such other." *Brown v. Branch,* 758 N.E.2d 48, 51-52 (Ind. 2001).

In this case, Plaintiff has admitted that: (1) two of its agents conducted an inspection of the Property between October 25, 2009, and November 1, 2009; (2) Plaintiff's agents informed Defendant that no significant repairs were necessary; and (3) Plaintiff's agents never informed Defendant of any required repairs prior to the termination of the Lease. Plaintiff very well may be held to these admissions for the purposes of any conditions of the Property that were not hidden at the time of the inspections. However, the court cannot conclude, as a matter of law, that Plaintiff has waived or is estopped from claiming a breach of the Lease with regard to any hidden defects in the Property that could be attributed to Defendant's failure to maintain the Property in accordance with Sections 13.2 and 19 of the Lease.[3]

---

[3]Also at issue at trial will be whether the January 26, 2010 letter constitutes proper notice of default and whether Plaintiff provided the requisite opportunity to cure any alleged default. While this issue was alluded to in the various pleadings and exhibits in this case, Defendant has not properly raised lack of notice and an opportunity to cure as a grounds for granting summary judgment. Nevertheless, the court notes that it will be Plaintiff's burden to demonstrate that each of the 12 items that it sought reimbursement for in the January 26, 2010 letter were items covered by Sections 13.2 or 19 of the Lease.

### C. Defendant is Not a Third-Party Beneficiary Under the Purchase Contract

Defendant next argues that the Purchase Contract indicates that Plaintiff took the Property from the Trust on an "'As Is', 'Where Is' and 'With All Faults' basis" and that Defendant is a third-party beneficiary to the Purchase Contract. However, the Purchase Contract clearly and unequivocally states that Plaintiff "purchases and accepts Property subject to the lease and possessory rights of [Defendant]." (Memorandum of Law in Support of Defendant's Motion for Summary Judgment at Ex. C).[4] Consequently, Plaintiff took the Property subject to the Lease and is entitled to enforce any of the provisions of the Lease, including Sections 13.2 and 19.

### D. Questions of Fact Remain Concerning Damages

Defendant's final argument is that it is Plaintiff's burden to prove that it suffered damages and that Plaintiff has failed to satisfy its burden. However, in examining the facts before the court, we are unable to conclude, *as a matter of law*, that all of the damages that Plaintiff alleges it suffered from are not recoverable pursuant to the terms of the Lease. Pursuant to Sections 13.2 and 19 of the Lease, Defendant was obligated to maintain the Property and to return

---

[4] The court has concluded above that Plaintiff has made certain admissions by failing to respond to Defendant's Requests for Admission. One such admission was that there was no assignment of the Lease. However, this admission does not preclude Plaintiff from relying on the Lease as a basis for relief. An "assignment" of a lease is an action that is contractually performed. *See, e.g., Collins v. McKinney,* 871 N.E.2d 363, 373 (Ind. Ct. App. 2007). Plaintiff still has a *statutory* right to enforce the Lease. Under Indiana law, "an alienee of a lessor or lessee of land has the same legal remedies in relation to the land as the lessor or lessee." Ind. Code § 32-31-3.

-11-

it in as good of a condition as it was in "following the completion of Tenant's Initial Improvements," absent normal wear, an act of God, or some other cause not attributable to Defendant. There are significant disputed issues of fact concerning whether or not it was Defendant's obligation under Sections 13.2 and 19 to cure all of the items listed in the January 26, 2010 letter. At trial, for each item referred to in the January 26, 2010 letter, Plaintiff will be required to explain which portion of the Lease obligates Defendant to pay for the repair of that particular item. Furthermore, Plaintiff will be required to demonstrate that it provided Defendant with the proper notice and an opportunity to cure the alleged defaults pursuant to Section 17.2 of the Lease.

## IV. Conclusion

For the reasons outlined above, Defendant's Motion for Summary Judgment is **DENIED.**

**SO ORDERED.**

**Dated:** August 31, 2011

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Electronic copies to:**

Richard A. Butler
rabutler9@comcast.net


Mark S. Fenzel
MIDDLETON REUTLINGER
mfenzel@middreut.com

Thomas Wayne Ice Jr.
MIDDLETON REUTLINGER
tice@middreut.com

Loren T. Prizant
MIDDLETON REUTLINGER
lprizant@middreut.com